# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD MOBLEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 09-815 |
| LINDA TARLINI | : | |

**MEMORANDUM RE: MOTION FOR JUDGMENT ON THE PLEADINGS**

**Baylson, J.**                                                                                                                  **July 15, 2009**

In the context of a township council meeting, what is the correct balance between free speech rights versus parliamentary rules, including a limitation on comments by a township councilman? Defendant Linda Tarlini's Motion for Judgment on the Pleadings challenges Plaintiff Donald Mobley's allegations of First Amendment violations of free speech, right to petition, and retaliation; a Fourteenth Amendment violation of equal protection; and a Pennsylvania Constitution violation of free speech. The allegations arise from both parties' participation as Council members at the Bristol Township Council meeting on February 5, 2009.

Although Plaintiff's Complaint is conclusory, he has filed, in opposition to Defendant's Rule 12(c) Motion, an affidavit asserting by Defendant's personal and political animosity against him. Federal Rule 12(d) requires the Court to convert this to a Motion for Summary Judgment and allow some time for reasonable discovery, followed by supplemental briefing. Fed. R. Civ. P. 12(d). The Court will therefore schedule a prompt telephone conference and instructs counsel to discuss a proposed discovery schedule before the conference. As such, Defendant's Motion for Judgment on the Pleadings will be denied without prejudice as to the free speech and First Amendment claims, but the Court will grant the Motion as to the equal protection claim.

However the Court writes to review the applicable law as to all claims so that the parties are aware of the legal standard to be applied on summary judgment after supplemental briefing.

I. **Factual Background and Procedural History**

   A. **Factual Background**

Plaintiff Don Mobley is a citizen of Bucks County and is a currently-sitting Bristol Township Councilman. (Compl. 1.) Defendant Linda Tarlini is the President of the Council. (Compl. 1.) On February 5, 2009, both parties attended a Bristol Township Council meeting as sitting members of the Council. (Compl. 1.) During the Council meeting, a motion was made and seconded concerning an application for a $5.5 million federal grant; the grant would be used to match a state loan for local sewer plant improvement projects. (Compl. ¶ 6; Ans. ¶ 6, Ex. A 23:30-23:45.)[1] After the motion was made, Plaintiff asked a question about the amount of the loan. (Ans. Ex. A 23:53.) Discussion ensued, and during the discussion, Plaintiff spoke twice on the topic of the motion. (Ans. Ex. A 25:33-29:55.) Prior to Plaintiff's second comment on the motion, Defendant stopped Plaintiff from speaking because not all Council members had spoken a first time on the motion. Defendant explained, "As long as another Council member wants to talk I have to allow them to talk first." (Ans. Ex. A 28:05.) After Vice President Rick Pluta

---

[1]The Undersigned notes that in the recent Supreme Court case, Scott v. Harris, the Court explicitly relied on a videotape of the events at issue where there were no allegations that the videotape had been doctored or altered. 550 U.S. 372, 379 n.1 (2007) ("We are happy to allow the videotape to speak for itself."). Therefore, this Court will rely on the videotape of the Council meeting, submitted as an exhibit to Defendant's Answer, to expand upon the pleadings' description about what occurred during the meeting. But see Dan M. Kahan, David A. Hoffman, and Donald Braman, Whose Eyes Are you Going to Belive? Scott v. Harris and the Perils of Cognitive Illiberalism, 122 Harv. L. Rev. 838 (2009) (providing a critical analysis of Scott and reviewing results of a survey of 1,350 individuals that challenged the assumptions and conclusions of the Supreme Court majority).

spoke about the need to apply for the grant quickly, Defendant then allowed Plaintiff to speak a second time. (Ans. Ex. A 29:05.) Plaintiff's comments included the statement:

> I agree that we have to do this. But I tell you what, I don't like the way that things are done quietly behind closed the door and at the last minute. If you want the people to support you, then you bring it out to the people and you let them know exactly what you're spending and what you're earmarking those dollars for.

(Ans. Ex. A 29:31-29:46.) Defendant then commented on Plaintiff's remarks, and Plaintiff responded to Defendant. (Ans. Ex. A 29:55-31:13.) Vice President Pluta then spoke a second time, with a brief interruption by Plaintiff. (Ans. Ex. A 31:15-32:23.)

When Plaintiff attempted to speak a third time on the motion, Defendant told Plaintiff that he was not allowed to speak more than twice on the same subject pursuant to Robert's Rules of Order.[2] (Ans. ¶ 7.) Their exchange went as follows:

Mobley: Well, to the chair.

---

[2]Robert's Rules of Order is a parliamentary manual whose provisions govern legislative bodies and other deliberative assemblies. Black's Law Dictionary 1148, 1149, 1354 (8th ed. 1999). The Rules were first published in 1876 by U.S. Army Major Henry Martyn Robert based on his desire to create a new code of parliamentary procedure that would be "adapted, in its details, to the use of ordinary societies." Henry M. Robert, preface to Pocket Manual of Rules of Order for Deliberative Assemblies (1st ed. 1876) (cited in later editions). The book is currently in its Tenth Edition, entitled Robert's Rules of Order Newly Revised (2000). Robert's Rules is the best-selling and most commonly adopted parliamentary manual in the United States. Black's Law Dictionary 1354 (8th ed. 1999).
    In attempting to consider a provision in Robert's Rules, the Third Circuit noted a "judicial policy of avoiding issues on the meaning and interpretation of rules of parliamentary procedure." Mapp v. Lawaetz, 882 F.2d 49, 52 n.1 (3d Cir. 1989); see also 59 Am. Jur. 2d. Parliamentary Law § 5 (2009) ("The courts generally do not concern themselves with violations of parliamentary rules in deliberative proceedings. . . ."). Further, as a general matter, "[i]t is well-accepted principle of law that legislative bodies are not bound by their own rules of procedure. . . . Such rules are created by the legislative body to insure the orderly conduct of business and the same body which makes them can also waive or simply disregard them at pleasure." State ex rel. Todd v. Essling, 128 N.W.2d 307, 318 (Minn. 1964) (internal citation omitted).

| | |
|---|---|
| Tarlini: | Excuse me, Mr. Mobley. In the Robert's Rules of Order, each Council person is allowed to speak twice on the same subject. |
| Mobley: | That's not true. |
| Tarlini: | It is true. |
| Mobley: | Russ, can you give me an opinion on that, please?[3] |
| Tarlini: | Mr. Mobley. Mr. Mobley, I have the floor at the moment. I'll tell you what it says. |
| Mobley: | Dictatorship all over again. [applause in the background] |
| Tarlini: | Mr. Mobley, I'm reading from the Robert's Rules of Order. |
| Mobley: | It's amazing, Linda. When you want to speak, you always had your opportunity to speak . . . |

(Ans. Ex. A 32:25-32:55.) Defendant then turned off Plaintiff's microphone. (Ans. Ex. A at 32:55.) Defendant asserts that Plaintiff's microphone was "turned off solely because he attempted to speak for a third time regarding the same motion," in violation of Robert's Rules, and "after explicitly seeking confirmation from the Solicitor." (Ans. ¶¶ 7, 8.)

The rule in question in Robert's Rules of Order states:

> NUMBER OF SPEECHES ON THE SAME QUESTION PER MEMBER PER DAY. Unless the assembly has a special rule providing otherwise, no member can speak more than twice to the same question on the same day . . . . Merely asking a question or making a brief suggestion is not counted as speaking in debate . . . .

(Ans. Ex. B 376-77 § 43.)

Once the Council completed discussion on the motion, the Council voted, and the motion passed unanimously. (Ans. ¶ 17, Ex. A 39:00-39:55.) After Plaintiff voted, he made the following statement:

> I'm voting yes because I know that we do need improvements down there, and I don't want to see the grant money . . . . But in the future, I think it's the responsibility of every elected official, and Rick I do keep tabs on what's going on, I may not attend the meetings, first of all I'm not invited or given a courtesy, but I do

---

[3]Russ Sacco is the Township Solicitor.

>keep up on what's going on, I do talk to the DEP and the EPA, and I do get updates from Jeff, so I do know what's going on. And I do vote yes. Thank you.

(Ans. Ex. A 39:06-39:40.)

Later in the meeting, Plaintiff and Defendant again argued about Defendant's use of Robert's Rules of Order. (Ans. Ex. A 1:13:40 – 1:15:50.) Members of the public also commented on and criticized the Council's use of the Rules, and Defendant responded. (Ans. Ex. A 1:24:00-1:27:00, 1:27:30-1:28:20, 1:31:30-1:33:00, 1:50:25-1:52:55, 1:57:55-1:58:25.)

Based on his microphone being turned off and his speech being silenced, Plaintiff alleges that he was "singled out" by Defendant "because of both the content of his speech and his viewpoint." (Compl. ¶ 7.) Plaintiff further alleges that Defendant's action to disconnect Plaintiff's microphone was "arbitrary[] and capricious[]" and was not based on consultation with the meeting solicitor nor any established procedure. (Compl. ¶ 8.) Plaintiff asserts that "[n]one of the other council speakers were treated in the same fashion by the Council President." (Compl. ¶ 10.) Further, although not in the pleadings, Plaintiff filed an affidavit that he and Defendant have a history of disagreement and conflict and are currently election adversaries. (Pl.'s Memo. Opp'n Def.'s Mot. Ex. A.) Defendant counters that "all Council members were treated identically pursuant to Robert's Rules of Order" and that Plaintiff was the only member speaking out of turn. (Ans. ¶ 10.)

### B. Procedural History

Plaintiff filed this Complaint February 23, 2009 (Doc. No. 1). Plaintiff alleges the following claims: violation of free speech under the First Amendment (Count I), violation of right to petition under the First Amendment (Count II), official oppression and intimidation

(Count III), denial of equal treatment in violation of the Fourteenth Amendment (Count IV), and violation of the state constitutional right of free speech under Article I, Section 7 of the Pennsylvania Constitution (Count V). Defendant answered on April 1, 2009 (Doc. No. 2).

Defendant filed this Motion for Judgment on the Pleadings on April 14, 2009 (Doc. No. 4). Plaintiff responded on April 28, 2009 (Doc. No. 7), and Defendant replied on May 5, 2009 (Doc. No. 8).

## II. Jurisdiction

This Court has jurisdiction over federal constitutional issues pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367(a).

## III. Parties' Contentions

### A. Defendant's Contentions

Defendant argues that all of Plaintiff's First Amendment claims should be dismissed as a matter of law because Defendant's application of Robert's Rules constituted a valid time, place, and manner restriction allowed in a designated public forum. Defendant claims that she applied Robert's Rules of Order to the Council meeting in a viewpoint-neutral manner, since Plaintiff was allowed to speak twice on the motion, voted in favor of the motion, and was allowed to explain his vote. As to Plaintiff's right to petition claim, Defendant further argues that Plaintiff's right to petition is coextensive to his free speech right and therefore was not violated as explained above. As to Plaintiff's retaliation claim, Defendant argues that Plaintiff's speech was restricted in a neutral, non-retaliatory manner. As to Plaintiff's Fourteenth Amendment equal protection claim, Defendant argues that her treatment of Plaintiff was reasonable and does not amount to a violation of equal protection. As to Plaintiff's state constitutional free speech claim, Defendant

argues that the Pennsylvania right of free speech is coextensive with the federal right in this context and therefore must be dismissed for the same reason.

### B. Plaintiff's Contentions

Plaintiff argues that factual issues exist such that Defendant's Motion for Judgment on the Pleadings cannot be granted. First, Plaintiff argues that a fact finder could reasonably find that the Defendant's conduct was motivated by her antipathy to Plaintiff and Plaintiff's views on the subject of the motion, as well as the adversarial relationship between Defendant and Plaintiff. Second, Plaintiff argues that during one of his comments, he was asking a question rather than attempting to comment on the motion, and thus his question would not constitute one of his two available speeches under Robert's Rules of Order. Third, Plaintiff argues that Defendant's use of Robert's Rules of Order on February 5, 2009, was the first such invocation in Bristol Township Council meeting history. Fourth, Plaintiff claims that Defendant's actions constituted content-, viewpoint-, and speaker-based discrimination, which is subject to strict scrutiny. Plaintiff also argues against qualified immunity as an affirmative defense; however, since Defendant does not make such an argument, this Court will not consider it.

## IV. Legal Standard

The court may only grant a motion under Federal Rule of Civil Procedure 12(c) if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Nesmith v. Independence Blue Cross, 2004 WL 253524, at *3 (E.D. Pa. Feb. 10, 2004) (quoting Corestates Bank, N.W. v. Huls Am., Inc., 176 F.3d 187, 193 (3d Cir. 1999)). In deciding a motion for judgment on the pleadings under Rule 12(c), the court uses the same standard as when deciding a motion to dismiss under Rule

12(b)(6). Nesmith, 2004 WL 253524, at *3 (citing Constitution Bank v. DiMarco, 813 F. Supp. 154, 157 (E.D. Pa. 1993)). Thus, the motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 189 (3d Cir. 1998). The Court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences therefrom in favor of the nonmoving party. Consol. Rail Corp. v. Portlight Inc., 188 F.3d 93, 94 (3d Cir. 1999).

Similarly, as in a 12(b)(6) motion, the Court may look only to the facts alleged in the pleadings and any attachments. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994) (discussing the 12(b)(6) standard); Hayes v. Cmty. Gen. Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir. 1991) (discussing the 12(c) standard). Exhibits attached to a pleading may be considered on a 12(c) motion, since under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). See also U.S. Fid. & Guar. Co. v. Tierney Assocs., Inc., 213 F. Supp. 2d 468, 470 n.2 (M.D. Pa. 2002) ("Consideration of the content of documents to which a complaint makes reference in deciding a Rule 12 motion is, of course, appropriate.").

**V.     Discussion**

    **A.     Federal Free Speech Claim**

        1.     Type of Forum

In assessing a free speech violation, the type of forum dictates the nature of the permissible restriction. There are three types of forums that a government may establish. Eichenlaub v. Twp. Of Indiana, 385 F.3d 274, 281 (3d Cir. 2004). First, in a quintessential public forum, typically described as public streets and parks, "members of the public retain

strong free speech rights." Pleasant Grove City, Utah v. Summum, 129 S.Ct. 1125, 1132 (2009). However, the government may enforce reasonable time, place, and manner restrictions, or content-based restrictions that are necessary to serve a compelling government interest. Id. (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)). Valid time, place, and manner restrictions must be (1) unrelated to content; (2) narrowly tailored to serve a significant governmental interest; and (3) must allow alternative ways of communicating the same information. Eichenlaub, 385 F.3d at 280 (internal quotations omitted). The government may also create designated public forums by deliberately opening government property to the public for that purpose; such forums are subject to the same restrictions as the quintessential public forum. Pleasant Grove, 129 S.Ct. at 1132 (citing Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 806 (1985)).

Second, the government may create a limited forum, which is "limited to use by certain groups or dedicated solely to the discussion of certain subjects." Pleasant Grove, 129 S.Ct. at 1132 (citing Perry, 460 U.S. at 46 n.7). In limited public forums, the government may impose restrictions on speech as long as they are reasonable and viewpoint neutral. Id. (citing Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106-07 (2001)). In such forums, "content-based restraints are permitted, so long as they are designed to confine the 'forum to the limited and legitimate purposes for which it was created.'" Eichenlaub, 385 F.3d at 280 (quoting Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829 (1995)). Third, non-public forums—facilities that are not dedicated to public communicative activity—allow the state to exclude categories of speech by subject matter and type of speaker, provided that the

rules employed are reasonable and viewpoint neutral. See Eichenlaub, 385 F.3d at 279; Brody ex. rel. Sugzdinis, 957 F.2d 1108, 1117 (3d Cir. 1992) (citing Cornelius, 473 U.S. at 806).

The conduct in question in this case occurred at a township council meeting, and the Third Circuit has previously analyzed free speech claims in this type of forum. In Eichenlaub, a citizen brought a free speech claim involving the curtailment of his speech during and subsequent ejection from the citizen's forum portion of a local township meeting. 385 F.3d at 281. The court stated that it was a close question whether the citizen's forum was a general or limited public forum, since although the citizen's forum was open to all citizens, discussion was limited to town government matters and not other types of expressive activity. Id. Therefore, the court appeared to conclude that the citizen's forum was a limited public forum. Id. ("Thus matters presented at a citizen's forum may be limited to issues germane to town government.") Regardless of the type of forum designation, the court held that restricting "repetitive and truculent" behavior by a citizen who repeatedly interrupted the chairman was "the sort of time, place, and manner regulation that passes muster under the most stringent scrutiny for a public forum." Id.

Four years later, the Third Circuit considered another free speech claim arising from a local government meeting, this time brought by a council member against the council president. Olasz v Welsh, 301 Fed Appx. 142 (3d Cir. 2008). Again, the court determined that the defendant's actions at the two meetings in question to constrain plaintiff's disruptive behavior, which eventually caused him to be removed from the meeting by the police, constituted "the type of time, place, and manner regulation that survives even the most stringent scrutiny for a public forum." Id. at 146.

Therefore, in both Eichenlaub and Olasz, the Third Circuit did not find it necessary to classify the type of forum at issue, since it found that the restrictions imposed were permissible even in the most speech-permissive type of forum. However, based on the court's analysis in Eichenlaub and the Supreme Court's definition of a limited public forum in Pleasant Grove, the portion of the Council meeting at issue here—which was dedicated to Council member (as opposed to public) speech—is a limited public forum, since the forum was limited to certain groups (Council members and Township administrators) and certain topics (motions and other Township matters). See also Liberty & Prosperity 1776, Inc. v. Corzine, 2009 WL 537049, at *6 n.12 (D.N.J. 2009) (finding that the town hall meeting at issue was a limited public forum); but see Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006) (appearing to assume that a city council meeting was a public forum).

    2.    Permissibility of Speech Restrictions

Since the Bristol Township Council meeting constituted a limited public forum, the Court must assess whether Defendant's use of Robert's Rules of Order constituted a permissible restriction on free speech. First, Defendant's use of Robert's Rules did not constitute a content-related restriction, and therefore passes muster in both a limited public forum and designated public forum. A law regulating speech is content neutral if it applies to all speech regardless of the ideas or views expressed. See Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 643 (1994). Since the Robert's Rule of Order invoked by Defendant in this case, that an assembly member can not speak more than twice to the same issue on the same day, does not distinguish based on content or message, it is a content-neutral regulation. Yet, even if the Rule is considered content-based, perhaps because its application depends on repeated discussion of a particular topic, this

-11-

type of restriction is still permissible in a limited public forum where, as here, it confines the forum to the legitimate purpose for which it was created, discussing Township business. See Eichenlaub, 385 F.3d at 280. Second, the Third Circuit has held that procedural rules used to impose order in public meetings are appropriate time, place, and manner restrictions, regardless of the type of forum. See Olasz, 301 Fed Appx. at 146; Eichenlaub, 385 F.3d at 281. It follows that Defendant's mere use of procedural rules at the Council meeting is permissible under the First Amendment.

However, the Court is not ruling that application of Robert's Rules necessarily, as a matter of law, negates Plaintiff's Constitutional claims or that use of Robert's Rules of Order was improper in any sense. Instead, Defendant's particular application of Robert's Rules may, under Plaintiff's affidavit, amount to viewpoint-based discrimination of the speaker and thus be unconstitutional in any type of public forum. "The First Amendment extends not only to the content of a person's speech but to the speaker himself." Wilkinson v. Bensalem Twp., 822 F.Supp. 1154, 1158 (E.D. Pa. 1993) (citing First Nat. Bank of Boston v. Bellotti, 435 U.S. 765, 784-85 (1978)). When restrictions on speech "turn on the specific views expressed by a speaker, such '[v]iewpoint discrimination is [ ] an egregious form of content discrimination' and '[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" Circle Schools v. Pappert, 381 F.3d 172, 180 (3d Cir. 2004) (citing Rosenberger, 515 U.S. at 829). Contrary to Defendant's argument in its Reply brief, the Court must examine whether Defendant engaged in such discrimination in applying the Robert's Rule to silence Plaintiff.

In Wilkinson, Judge Dalzell noted in performing a qualified immunity analysis[4] that "courts have consistently recognized that local officials presiding over duly-called public meetings may offend First Amendment rights when they make ad hoc parliamentary rulings." 822 F.Supp. 1154, 1158 (E.D. Pa. 1993). In that case, the defendant, the township council president, prevented the plaintiff, a local citizen, from speaking during the public portion of the council meeting; plaintiff was finally allowed to speak five hours into the meeting after nearly everyone had left. Id. at 1156. The defendant claimed he did so to avoid disruption of the meeting. Id. at 1158-59. However, Judge Dalzell stated that the defendant could only impose such restrictions if he had reason to believe that the action was necessary to avoid disruption; the defendant could not do so if he had no reasonable basis to fear disruption or if his actual purpose was to prevent the plaintiff from expressing his viewpoint. Id. at 1159 (quoting Collinson v. Gott, 895 F.2d 994, 1000 (4th Cir. 1990) (Phillips, J., concurring)). As such, Judge Dalzell concluded that a genuine issue of material fact existed regarding the defendant's motive for silencing the plaintiff, and therefore he denied summary judgment. Beyond the defendant's conduct at the meeting itself, additional evidence of motive existed, including testimony that other council members at the meeting had said to the defendant "don't let him talk" and "you don't have to let him talk," that plaintiff and defendant had engaged in a heated exchange at a prior council meeting, and that plaintiff had left a somewhat threatening message on defendant's answering machine. Id. at 1156, 1159.

---

[4]Defendant did not rely on qualified immunity as an affirmative defense or in her Rule 12(c) Motion, but may do so in her Motion for Summary Judgment.

In Monteiro v. City of Elizabeth, the Third Circuit upheld the district court's determination that the defendant city council president's motive in barring a council member from speaking and subsequently having him arrested and ejected from the meeting was a disputed issue of fact for the jury. 436 F.3d 397, 404-06 (3d Cir. 2006). The plaintiff council member "arguably disrupt[ed] the proceedings by interrupting [defendant]," but the purpose of the plaintiff's disruption was to defend himself from a pointed personal attack by the defendant when the defendant was supposed to be discussing the merits of the proposed city budget. Id. at 400-01, 405. In upholding the district court's denial of defendant's judgment as a matter of law, the court noted the speed with which the defendant ejected the plaintiff from the meeting, defendant's failure to consult fellow council members or seek a compromise, and defendant's failure to follow established procedure.[5] Id. at 405. The Third Circuit concluded that these factors constituted evidence by which a reasonable jury could view defendant's behavior as "motivated by anger and personal animosity, rather than a desire to maintain smooth operation of the meeting." Id. The district court also relied on "the history between the parties" to find a disputed issue of fact as to whether the defendant engaged in viewpoint discrimination. Id. at 403 (quoting Monteiro v. City of Elizabeth, No. 01-1844, at 22-23 (D.N.J. Nov. 12, 2003)).

In the instant case, taking Plaintiff's allegations as true, the Court must deny Defendant's 12(c) motion in order to allow factual development of whether Defendant engaged in viewpoint-based discrimination or acted out of hostility or political opposition to Plaintiff. Plaintiff alleges

---

[5]In Monteiro, the Third Circuit noted that the City Rules incorporated Robert's Rules of Order, which provided two methods by which a person acting in an unruly manner could be removed from a council meeting. However, the council president did not follow either procedure in ejecting Monteiro. 436 F.3d at 401 n.2.

that he was "singled out" by Defendant because of both the content of his speech and his viewpoint, that Defendant acted "arbitrarily and capriciously," and that Defendant did not treat any of the other council speakers in the same fashion as Plaintiff. (Compl. ¶¶ 7,8, 10.) The facts in this case do not appear as egregious as in Wilkinson—where the plaintiff was not permitted to speak at all during the regularly allotted time and where there was clear evidence of animosity between the plaintiff and defendant—or as in Montiero—where the plaintiff was arrested, escorted from the meeting, and denied the opportunity to vote on the contentious issue and the defendant publicly berated the plaintiff at the meeting. However in both of those cases, discovery had occurred and the court was considering facts in the context of summary judgment or judgment as a matter of law. See also Olasz, 301 Fed. Appx. at 145-46; Eichenlaub, 385 F.3d at 282 (both deciding plaintiffs' First Amendment claims in the context of motions for summary judgment).

Although Defendant claims that she was merely applying Robert's Rules in silencing Plaintiff and that no other members tried to violate the Rules as Plaintiff did—and the videotape appears to corroborate this statement—the Court can not determine at this stage in the litigation that the application of Robert's Rules, and Defendant's conduct in general, requires a legal conclusion that viewpoint-based discrimination did not exist. Plaintiff's conduct at the meeting, although he disagreed with Defendant and other Council members, was generally constrained and respectful. The videotape of the meeting does not show Plaintiff acting in a "repetitive and truculent" manner or displaying "badgering, constant interruptions, and disregard for the rules of decorum," as in Eichenlaub, where the Third Circuit ruled that the council president's restriction of the plaintiff's speech was proper. 385 F.3d at 281. By contrast, as the court relied on in

-15-

Montiero, Plaintiff filed an affidavit concerning a history of animosity and political rivalry between himself and Defendant. But see Olasz, 301 Fed.Appx. at 146 (not finding that a record of political and policy differences between the parties gave rise to the inference of impermissible viewpoint discrimination). Comments at the Council meeting suggested that Defendant was newly-elected as President and had just begun imposition of Robert's Rules; therefore it is difficult to assess the longer-term consistency of the application of the Rules as to Plaintiff and others. Finally, when Defendant cut off Plaintiff's microphone, Plaintiff was expressing views critical of the Council and Township leadership. Plaintiff is entitled to an opportunity to present facts sufficient to show impermissible discrimination. The existence of viewpoint discrimination may be a question of fact and therefore can not be determined as a matter of law without discovery.

    **B.    Right to Petition Claim**

The right to petition must be considered in conjunction with the right to freedom of speech. The Petition Clause of the First Amendment is on a par with the freedoms to speak, publish, and assemble. We, Inc. v. City of Philadelphia, 174 F.3d 322, 327 (3d Cir. 1999) (citing McDonald v. Smith, 472 U.S. 479, 485 (1985)). Further, the protections afforded to the right to petition are no more absolute or extensive than that provided by other First Amendment guarantees. See We, Inc., 174 F.3d at 327. Courts have applied the same First Amendment analysis to free speech and right to petition claims when considering government-imposed limitations on speech in a public fora. Liberty & Prosperity, 2009 WL 537049, at *4 n.9 (citing Boos v. Barry, 485 U.S. 312, 319 (1988); Eichenlaub, 385 F.3d at 281) (treating the plaintiff's right to free speech, assembly, and petition claims collectively).

In the case at hand, Plaintiff alleges a violation of his right to petition the government for redress of grievances. (Compl. ¶ 17.) Since courts employ the same analysis to determine a violation of both the right to free speech and the right to petition, Defendant's Motion must be denied as to Plaintiff's right to petition claim for the reasons stated supra, Part V.A.2.

### C. Retaliation Claim

To state a claim for actionable retaliation under the First Amendment, the plaintiff must allege (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Plaintiff alleges that his right to express his views without restraint and fear of retaliation constitutes constitutionally protected conduct. (Compl. ¶ 21.) As explained supra, Part V.A.2, the Court can not determine without discovery whether Plaintiff engaged in protected conduct or instead whether Defendant acted permissibly in limiting Plaintiff's speech through procedural rules. Plaintiff further alleges that Defendant's action to switch off his microphone amounted to intimidation, oppression, and retaliation and therefore silenced Plaintiff from exercising his constitutional rights. (Compl. ¶¶ 20, 22.) Since Plaintiff has sufficiently pled the three elements of retaliation, Defendant's Motion will be denied at this stage as to the retaliation claim.

### D. Equal Protection Claim

Plaintiff's equal protection claim is based on his allegation that Defendant singled out Plaintiff by silencing only his microphone during Council debate on the federal grant motion. (Compl. ¶¶ 23, 24.) Plaintiff has not alleged that he is a member of a protected class or that any

differences in Defendant's treatment of him stem from invidious forms of discrimination. The Supreme Court has endorsed a "class of one" equal protection theory where the plaintiff can show he was intentionally treated differently from similarly situated individuals and there was no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). "[A]t the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).

Plaintiff has alleged that no other Council member was deprived of his or her right to speak during the debate and that Defendant cut off his microphone to silence him. (Compl. ¶¶ 24, 25.) However, Plaintiff does not allege that no other Council member who had already spoken twice on the motion was deprived of his or her right to speak. Therefore, Plaintiff has failed to identify a similarly situated individual in the specific instance at issue here, where Defendant silenced Plaintiff by invoking the Robert's Rule of Order barring anyone from speaking more than twice on the same motion on the same day. As the videotape of the meeting reveals, no other Council member attempted to speak twice on the federal grant motion at issue in this suit or any other motion discussed at the council meeting.[6] Since no other Council member was similarly situated to Plaintiff in this respect, Plaintiff's equal protection claim fails. Further, Defendant has pled a rational basis for silencing Plaintiff—she was imposing Robert's

---

[6]The videotape of the meeting reveals that Council members Davis and Pluta spoke twice on the federal grant motion and Pluta also asked an initial question about the motion. (Ans. Ex. A 24:40-32:30.) In addition, both Davis and Pluta responded to questions posed by a member of the public on the motion. (Id. 33:30-36:50.) However no other Council member attempted to make a third comment on the motion as Plaintiff did.

Rules where Plaintiff was the only Council member who tried to abuse them. Defendant's Motion will be granted as to the equal protection claim.

### E. Pennsylvania Free Speech Claim

The Pennsylvania right of free speech provides greater protections than the federal right. See Pap's A.M. v. City of Erie, 812 A.2d 591, 605 (Pa. 2002). In fact the text of Article I, Section 7 in the Pennsylvania Constitution is broader than the federal First Amendment text in that it "specifically affirms the 'invaluable right' to the free communication of thoughts and opinions, and the right of 'every citizen' to 'speak freely' on 'any subject' so long as that liberty is not abused." Id. at 603 (quoting Pa. Const. art. I, § 7). Since the Court is denying Defendant's Motion as to Plaintiff's First Amendment claim and since the Pennsylvania right is even more expansive than the federal right, the Court must deny the Motion as to Plaintiff's state constitutional free speech claim.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion is denied as to the First Amendment free speech, petition, and retaliation claims and the state free speech claim. Defendant's Motion is granted as to the Fourteenth Amendment claim.

An appropriate Order follows.

---

O:\Shelley\09-815 Mobley v. Tarlini\Memo re JoP.wpd